FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Apr 08, 2024

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

|  |  |
|---|---|
| ANGELA HELEN K., <br><br> Plaintiff, <br><br> v. <br><br> MARTIN O'MALLEY, COMMISSIONER OF SOCIAL SECURITY,[1] <br><br> Defendant. | No: 2:22-cv-00163-LRS <br><br> ORDER AFFIRMING THE COMMISSIONER'S DECISION |

BEFORE THE COURT are the parties' briefs. ECF Nos. 10, 11.[2] This matter was submitted for consideration without oral argument. Plaintiff is

---

[1] Martin O'Malley became the Commissioner of Social Security on December 20, 2023. Pursuant to Rule 25(d) of the Rules of Civil Procedure, Martin O'Malley is substituted for Kilolo Kijakazi as the Defendant in this suit.

ORDER - 1

represented by attorney Asa LaMusga.  Defendant is represented by Special Assistant United States Attorney Sarah Moum.  The Court, having reviewed the administrative record and the parties' briefing, is fully informed.  For the reasons discussed below, Plaintiff's brief, ECF No. 10, is denied and Defendant's brief, ECF No. 11, is granted.

## JURISDICTION

Plaintiff Angela Helen K.[3] (Plaintiff), filed for disability insurance benefits (DIB) on October 2, 2019, alleging an onset date of October 1, 2014, which was amended to April 26, 2018, at the hearing.  Tr. 64, 213-14.  Benefits were denied initially, Tr. 127-29, and upon reconsideration, Tr. 135-40.  Plaintiff appeared at a hearing before an administrative law judge (ALJ) on March 8, 2021.  Tr. 58-93.  On May 3, 2021, the ALJ issued an unfavorable decision, Tr. 31-50.  The Appeals Council denied review on April 29, 2022.  Tr. 1-7.  The matter is now before this Court pursuant to 42 U.S.C. § 405(g).

---

[2] The parties' briefs are each labeled as a Motion for Summary Judgment.  ECF No. 10, 11.  The supplemental rules for Social Security actions under 42 U.S.C. § 405(g) went into effect on December 1, 2022; Rule 5 and Rule 6 state the actions are presented as briefs rather than motions.  Fed. R. Civ. P. Supp. Soc. Sec. R. 5, 6.

[3] The court identifies a plaintiff in a social security case only by the first name and last initial in order to protect privacy.  See Local Civil Rule 5.2(c).

ORDER - 2

# BACKGROUND

The facts of the case are set forth in the administrative hearings and transcripts, the ALJ's decision, and the briefs of Plaintiff and the Commissioner, and are therefore only summarized here.

Plaintiff was 47 years old at the time of the hearing. Tr. 65. She has a GED and completed a trade school program for administrative computer specialist. Tr. 67. She last worked in 2014 at a rent-to-own furniture store doing set-up, sales, and scheduling and making deliveries. Tr. 67. She quit that job because she was required to lift furniture and was not able to do so. Tr. 68. She also has work experience in farm and ranch retail, home improvement retail, as an IT manager, and performing technical support for web hosting services. Tr. 69-72.

Plaintiff has pain originating from her lower back. Tr. 79. She testified that her doctor said a disc is pinching on the nerve root. Tr. 79. On good days, she has difficulty walking. Tr. 72. Her right leg and toes go numb if she sits too long. Tr. 76. She feels pressure in her lower back which radiates down the back of her leg. Tr. 76-77. Sometimes she loses bladder control. Tr. 79.

# STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158

ORDER - 3

(9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id*. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

**FIVE-STEP EVALUATION PROCESS**

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in

ORDER - 4

any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A).  Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria.  *See* 20 C.F.R. § 404.1520(a)(4)(i)-(v).  At step one, the Commissioner considers the claimant's work activity.  20 C.F.R. § 404.1520(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 404.1520(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two.  At this step, the Commissioner considers the severity of the claimant's impairment.  20 C.F.R. § 404.1520(a)(4)(ii).  If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three.  20 C.F.R. § 404.1520(c).  If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 404.1520(c).

ORDER - 5

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 404.1520(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. § 404.1545(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner should conclude whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). In making this determination, the

ORDER - 6

Commissioner must also consider vocational factors such as the claimant's age, education, and past work experience. 20 C.F.R. § 404.1520(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. § 404.1520(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commiss0ioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 404.1560(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

**ALJ'S FINDINGS**

At step one, the ALJ found Plaintiff did not engage in substantial gainful activity during the period from her alleged onset date of October 1, 2014, through her date last insured of December 31, 2019. Tr. 36. At step two, the ALJ found that through the date last insured, Plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine, discogenic and degenerative; irritable bowel disease (IBD); and upper extremity sprains and strains. Tr. 36. At step three, the ALJ found that through the date last insured, Plaintiff did not have an

impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. Tr. 37.

The ALJ then found that through the date last insured, Plaintiff had the residual functional capacity to perform light work with the following additional limitations:

> [T]he operation of foot controls with the left lower extremity must have been limited to occasionally. In addition, the climbing of ramps and stairs, stooping (bending at the waist), kneeling, crouching (bending at the knees) must have been limited to occasionally, while the climbing of ladders, ropes and scaffolds, and crawling must have been entirely precluded from assigned work duties, and balancing must be limited to frequently. Within the assigned work area there must have been less than occasional concentrated exposure to extreme cold, wetness, vibration, and hazards.

Tr. 901.

At step four, the ALJ found that through the date last insured, Plaintiff was capable of performing past relevant work. Tr. 43. Alternatively, after considering Plaintiff's age, education, work experience, residual functional capacity, and the testimony of a vocational expert, the ALJ found there were other jobs that existed in significant numbers in the national economy that Plaintiff could have performed, such as taper, wafer breaker, or table worker. Tr. 43-45. Thus, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, at any time from October 1, 2014, the alleged onset date, through December 31, 2019, the date last insured. Tr. 46.

ORDER - 8

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying disability income benefits under Title II of the Social Security Act.  ECF No. 10. Plaintiff raises the following issues for review:

1. Whether the ALJ properly considered Plaintiff's symptom testimony;

2. Whether the ALJ properly considered the medical evidence subsequent to the date last insured.

ECF No. 10 at 2.

## DISCUSSION

**A.    Symptom Testimony**

Plaintiff contends the ALJ failed to properly consider her symptom testimony. ECF No. 10 at 4-7.  An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible.  "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (internal quotation marks omitted). "The claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

ORDER - 9

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal citations and quotations omitted). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.* (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995); *see also Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

Factors to be considered in evaluating the intensity, persistence, and limiting effects of a claimant's symptoms include: 1) daily activities; 2) the location, duration, frequency, and intensity of pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; 6) any measures other than treatment

ORDER - 10

an individual uses or has used to relieve pain or other symptoms; and 7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms. Social Security Ruling 16-3p, 2017 WL 5180304, at *9 (effective October 25, 2017); 20 C.F.R. § 404.1529(c). The ALJ is instructed to "consider all of the evidence in an individual's record," to "determine how symptoms limit ability to perform work-related activities." SSR 16-3p, at *2.

First, the ALJ found Plaintiff's statements and alleged limitations are inconsistent with the evidence of record. Tr. 39. An ALJ may not discredit a claimant's pain testimony and deny benefits solely because the degree of pain alleged is not supported by objective medical evidence. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989). However, the medical evidence is a relevant factor in determining the severity of a claimant's pain and its disabling effects. *Rollins*, 261 F.3d at 857. Minimal objective evidence is a factor which may be relied upon in discrediting a claimant's testimony, although it may not be the only factor. *See Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005).

The ALJ noted that in July 2017, Plaintiff complained of lower back pain which she attributed to her large breasts. Tr. 40 (citing Tr. 376-79). Ultimately, continued pain symptoms in the shoulders and lower back resulted in bilateral mammoplasty in December 2018. Tr. 40 (citing Tr. 337-41, 343, 349, 354, 359, 371-76). Plaintiff reported the surgery effectively eliminated her shoulder pain, but

ORDER - 11

she endorsed worsening of lumbar back pain and frequent gastric issues. Tr. 40 (citing Tr. 305, 315, 333-36). By March 2019, her gastric issues were diagnosed as inflammatory bowel disease (IBD), and the recommended treatment was diet management. Tr. 334-35.

For her lower back complaints, Plaintiff was referred to physical therapy beginning in April 2019. Tr. 41 (citing Tr. 328-34). Progress notes reflect significant pain reduction with treatment and any exacerbations were caused by increased physical activity such as performing outdoor chores like yard work. Tr. 41. Plaintiff reported "doing really well" and only had low-level pain unless she lifted a heavy item while using poor body mechanics. Tr. 41 (citing Tr. 317-328). In the fall of 2019, Plaintiff complained of worsening lower back pain with radiation into the lower extremities. Tr. 41 (citing Tr. 316-17). An October 2019 MRI documented severe loss of disc height at L5/S1 with endplate degeneration; right paracentral disc extrusion with severe narrowing of the right lateral recess; disc protrusion posteriorly displaces and likely compresses right L5 nerve root; minimal central canal narrowing; and mild to moderate bilateral neural foraminal narrowing. Tr. 41, 423.

The ALJ noted that later that month, Plaintiff visited an orthopedic surgeon for review of the MRI and assessment of her symptoms. Tr. 41, 578-82. Dr. Lee found full range of motion in the extremities, full strength in the bilateral lower extremities, and intact sensation, with tenderness to palpation in the sacroiliac joint

ORDER - 12

on the right side. Tr. 41, 581. Dr. Lee concluded the back pain was consistent with right sacroiliac joint dysfunction and referred Plaintiff for additional physical therapy. Tr. 41, 581.

The ALJ noted there are no further medical treatment notes before the date last insured. Tr. 41. However, the ALJ reviewed notes from January, February, and March 2020 and noted they reflect Plaintiff's providers acknowledged good potential for improvement with treatment and recommendations of conservative treatment. Tr. 41-42, 570-71, 592-93, 607, 626. Additionally, a February 2021 MRI showed no change from the 2019 MRI. Tr. 42, 637.

Plaintiff does not argue that the ALJ's interpretation of the evidence is incorrect; only that "the ALJ's reference to the overall record and summary of the evidence fails to state a basis for discounting [Plaintiff's] alleged pain and associated limitations." ECF No. 6 at 10. However, the ALJ's discussion of the evidence reflects findings reasonably supporting the ALJ's conclusion that the objective evidence does not support the level of limitation alleged. Tr. 39. The ALJ did not find that Plaintiff has no limitations; the ALJ included the limitations supported by the record in the RFC. Tr. 43. Additionally, despite finding that such limitations are not supported by the record, in consideration of Plaintiff's testimony that she needs to frequently change position and because of her alleged radiculopathy, the ALJ alternatively considered limitations of a sit/stand option and restriction of foot controls, as well as environmental and postural limitations. Tr. 43. The ALJ's

ORDER - 13

findings are based on a reasonable interpretation of the record and are supported by substantial evidence.

Second, the ALJ found that Plaintiff's treatment was both conservative and effective, which is not consistent with her allegations. Tr. 39-43. The effectiveness of treatment is a relevant factor in determining the severity of a claimant's symptoms. 20 C.F.R. § 404.1529(c)(3); *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) (determining that conditions effectively controlled with medication are not disabling for purposes of determining eligibility for benefits); *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (recognizing that a favorable response to treatment can undermine a claimant's complaints of debilitating pain or other severe limitations). Similarly, claims about disabling pain are undermined by favorable response to conservative treatment. *Tommasetti*, 533 F.3d at 1039-1040; *see also Parra v. Astrue*, 481 F.3d 742, 750–51 (9th Cir. 2007) (finding "evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment"); *see also Meanel v. Apfel,* 172 F.3d 1111, 1114 (9th Cir. 1999) (rejecting subjective pain complaints where petitioner's "claim that she experienced pain approaching the highest level imaginable was inconsistent with the 'minimal, conservative treatment' that she received").

The ALJ noted the bilateral mammoplasty in December 2018 eliminated Plaintiff's shoulder complaints. Tr. 305, 315. For Plaintiff's IBD, no medication was prescribed, and Plaintiff was counseled to maintain a healthy diet and keep a

ORDER - 14

food diary. Tr. 287-88, 334-35. With regard to Plaintiff's lower back, physical therapy notes indicate improvement in symptoms and significant reduction in pain. Tr. 41, 320-26. The orthopedic surgeon recommended additional physical therapy in October 2019, with no mention of possible surgical intervention. Tr. 41, 581. In January 2020, after the alleged onset date, Plaintiff's physician renewed physical therapy orders, provided a prescription for a TENS unit, and planned additional conservative treatment of lidocaine patches, neuropathic medication, and potential steroid injections if treatment was not effective. Tr. 41, 569-72. Later records continued to reflect mostly conservative treatment, but also included injections. Tr. 42, 593, 626. These records reasonably support the ALJ's conclusion that Plaintiff's treatment was conservative and effective during the period at issue.

Plaintiff argues her treatment has not been conservative and cites records regarding her treatment, ECF No. 10 at 6, most of which were also cited by the ALJ, indicating that: treatment of ibuprofen and massage was recommended, Tr. 544 (3/18); over-the-counter medication like Aleve and ice were recommended, Tr. 513 (9/19); physical therapy, brace, hot baths, CBD oil, ibuprofen, TENS machine, and stretching were recommended, Tr. 612 (1/20); physical therapy notes, Tr. 594 (2/20); oxycodone was prescribed but discontinued due to nausea, Tr. 631 (1/21); and three non-epidural injections of nonsteroidal anti-inflammatory medication (ketorolac tromethamine) in December 2020 and January 2021, Tr. 626, 628-29, 631. ECF No 10 at 6. Regular treatment with prescriptions of narcotics and

ORDER - 15

epidural injections may not be conservative treatment. *See Shepard v. Colvin*, 2015 WL 9490094, at *7 (E.D. Cal. Dec. 30, 2015) (noting that Ninth Circuit cases have found that "treatment was conservative when the claimant's pain was adequately treated with over-the-counter medication and other minimal treatment;" however, where record reflected heavy reliance on Tramadol and Oxycodone and other prescriptions for pain, record did not support finding that treatment was "conservative") (internal citations omitted); *Lapeirre-Gutt v. Astrue*, 382 Fed. App'x. 662, 664 (9th Cir. 2010) (doubting whether "copious amounts of narcotic pain medication" as well as nerve blocks and trigger point injections was "conservative" treatment)).

However, on this record, and particularly during the period at issue, the ALJ reasonably found Plaintiff's physical therapy, over-the-counter medication such as Aleve and ibuprofen, and other treatments were conservative. *See Tommasetti,* 533 F.3d at 1039–40 (classifying physical therapy and anti-inflammatory medication, TENS unit, and a lumbosacral corset as conservative treatment for allegedly debilitating back pain); *see also Parra,* 481 F.3d at 750-751 (classifying over-the-counter pain medication as a conservative course of treatment for knee pain); *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) (finding conservative treatment where claimant took only ibuprofen to treat pain). Non-conservative treatment, like Plaintiff's mammoplasty, was effective and eliminated her shoulder pain. Tr. 305, 315. The ALJ's findings are based on a

ORDER - 16

1  reasonable interpretation of the record, and this is a clear and convincing reason
2  supported by substantial evidence.

3  **B.    Records After the Date Last Insured**

4  Plaintiff contends the ALJ erred by failing to consider medical evidence
5  generated after Plaintiff's date last insured (DLI).  ECF No. 10 at 7-9.  In order to
6  obtain disability insurance benefits, a claimant must establish disability before the
7  date last insured.  *See* 42 U.S.C. § 423(c); 20 C.F.R. § 404.1520.  The burden of
8  proof on this issue is on the claimant.  *See Morgan v. Sullivan*, 945 F.2d 1079, 1080
9  -1081 (9th Cir. 1991) (citing *Gamer v. Sec'y of Health and Human Servs.*, 815 F.2d
10 1275, 1278 (9th Cir. 1987)).  In this case, Plaintiff's date last insured is December
11 31, 2019, and Plaintiff must establish disability before that date.  *See* Tr. 34.

12 The ALJ found that "[p]ost-date last insured records from 2020 and 2021 are
13 not relevant to my determination of the claimant's Title II claim."  ECF No. 10 at 7
14 (quoting tr. 41-42).  However, post-DLI evidence which pertains to Plaintiff's "pre-
15 expiration condition[s]," is relevant and requires consideration on the merits.  *See*
16 *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1232 (9th Cir. 2011) (citing
17 *Lester*, 81 F.3d at 832 ("medical evaluations made after the expiration of a
18 claimant's insured status are relevant to an evaluation of the pre-expiration
19 condition")); *see also Smith v. Bowen*, 849 F.2d 1222, 1225 (9th Cir. 1988) (finding
20 medical opinions cannot be disregarded solely because they post-date the DLI).
21

ORDER - 17

      Plaintiff contends the MRI report from February 2021 is evidence the ALJ improperly failed to consider. ECF No. 10 at 8. The February 2021 MRI documents degenerative changes and impingement of the right L5 nerve root. Tr. 637. However, the MRI specifically notes that the findings are "unchanged" from previous MRI findings. Tr. 637; *compare* Tr. 423 (2019 MRI results). Furthermore, although the ALJ declared post-DLI evidence to be "irrelevant," the ALJ actually considered the February 2021 MRI, noting that it "documented no interval deterioration to the lumbar degeneration from the 2019 study." Tr. 42. This finding is supported by substantial evidence.

      The ALJ also considered a treatment record from January 2020, Tr. 41 (citing Tr. 570-71), which is cited by Plaintiff as post-DLI evidence the ALJ failed to consider. ECF No. 10 at 8. Plaintiff points out that findings included slowness from sitting to standing; antalgic gait; tenderness in her lumbar spine, right SI joint, and greater trochanteric; and she had 4-/5 strength with bilateral hip flexion. Tr. 570. The ALJ acknowledged those findings and noted the physician renewed physical therapy orders, prescribed a TENS unit for pain, and indicated possible future treatment plan included conservative measures such as lidocaine patches, neuropathic medications, and possible epidural steroid injections. Tr. 41, 569-72. The ALJ's finding is supported by substantial evidence.

      The ALJ also considered other post-DLI treatment records from February and April 2020 and January 2021, observing that Plaintiff's providers acknowledged

ORDER - 18

good potential for improvement with treatment, Tr. 607, and, while treatment such as physical therapy was limited due to Covid-19 pandemic restrictions, Tr. 592, Plaintiff's treatment remained mostly conservative via medication management, Tr. 593, and occasional injections of anti-inflammatories, Tr. 626.

The records cited by Plaintiff either duplicate or further support the ALJ's conclusions.  ECF No. 10 at 8-9 (citing Tr. 570, 605-06, 629).  At a physical therapy evaluation in February 2020, it was noted that the patient "demonstrates good potential to achieve established goals" through physical therapy.  Tr. 607.  In January 2021, physical exam results included positive straight leg raising test on the right, right sciatic nerve tenderness, and weak right L5-S1, consistent with similar findings earlier in the record.  Tr. 630.  It was noted that that an anti-inflammatory injection in December 2020 had helped and another injection was given.  Tr. 628-30.  To the extent the ALJ discounted post-DLI records as "irrelevant," the ALJ erred.  However, any error is harmless because the ALJ in fact substantively considered post-DLI records and made findings supported by substantial evidence.  *See Carmickle*, 533 F.3d at 1162; *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006); *Batson v. Comm'r of Soc. Sec. Admin*, 359 F.3d 1190, 1195-97 (9th Cir. 2004).

ORDER - 19

# CONCLUSION

Having reviewed the record and the ALJ's findings, this Court concludes the ALJ's decision is supported by substantial evidence and free of harmful legal error. The Court hereby affirms the Commissioner's decision.

Accordingly,

1. Plaintiff's Brief, **ECF No. 10**, is **DENIED**.

2. Defendant's Brief, **ECF No. 11**, is **GRANTED**.

**IT IS SO ORDERED**. The District Court Clerk is directed to enter this Order and provide copies to counsel. Judgment shall be entered for the Defendant and the file shall be **CLOSED**.

**DATED** April 8, 2024.

_____
LONNY R. SUKO
Senior United States District Judge

ORDER - 20